FILED
United States Court of Appeals
Tenth Circuit

August 20, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

AHMED AWE,

Plaintiff-Appellant,

v.

JANET NAPOLITANO, Secretary, U.S.
Department of Homeland Security;
EMILIO GONZALEZ, Director, U.S.
Citizenship and Immigration Services;
JOSE OLIVARES, Field Office Director,
USCIS,

Defendants-Appellees.

No. 11-5134
(D.C. No. 4:10-CV-00323-TCK-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

Ahmed Awe appeals from the district court's dismissal of a petition he filed

under 8 U.S.C. § 1421(c) seeking review of the denial of his naturalization

application.  Shortly after he filed his petition, he was placed in removal proceedings.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court concluded that it had jurisdiction over the petition under § 1421(c) but that Mr. Awe failed to state a claim upon which relief can be granted. The court reasoned that once removal proceedings were initiated against Mr. Awe, 8 U.S.C. § 1429 barred agency consideration of his naturalization application and so precluded the court from granting him any effective relief on his § 1421(c) petition. We agree with the district court that it had statutory jurisdiction and that § 1429 precludes any effective judicial relief, but we affirm its dismissal on an alternate ground—constitutional mootness. In our view, the fact that the district court could not grant Mr. Awe any effective relief shows that the initiation of removal proceedings mooted his petition. Accordingly, we vacate the district court's dismissal order and remand with instructions to dismiss without prejudice for lack of jurisdiction.

## I.    Background

Mr. Awe is a native and citizen of Belize. He has been a lawful permanent resident of the United States since 1968. In 1976, at age eighteen, he was convicted of burglary. In 1978, he was arrested for "drunkenness," and the charges were dismissed. In 1983, he pleaded guilty to possession of marijuana with intent to distribute, possession of cocaine, and maintaining a house where drugs were kept or sold. He received a suspended sentenced of three years' imprisonment and was fined. Two months later he was arrested for unlawfully possessing a controlled drug, but the charge was dismissed. In 2006, the Governor of Oklahoma pardoned him for his 1983 conviction.

In 2007, Mr. Awe filed an application for naturalization. The United States Customs and Immigration Services (USCIS) denied his application based on its conclusion that, despite his pardon, he was amenable to removal proceedings based on his 1983 conviction. The USCIS also noted that Mr. Awe had not disclosed all of his arrests. Mr. Awe filed a request for rehearing. The USCIS denied that request on January 26, 2010, on the ground that, pardon notwithstanding, his 1983 conviction appeared to place him in the class of removable aliens, and therefore he did not have the good moral character for naturalization that 8 U.S.C. § 1427(a) requires.[1]

On May 20, 2010, Mr. Awe filed a petition for review of the denial of his naturalization application in the district court pursuant to § 1421(c).[2] He claimed that USCIS erred in denying his application on the basis of his aged criminal history and mistakenly found that he failed to disclose all of his arrests. He asked the court to (1) exercise jurisdiction, (2) conduct a de novo hearing, (3) remand the matter to the

---

[1]    In denying the request for rehearing, the USCIS stated that a pardon is relevant only to certain grounds for removal listed in 8 U.S.C. § 1229(a)(2)(A)(vi), none of which applied to Mr. Awe.

[2]    8 U.S.C. § 1421(c) provides:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

agency with instructions to grant his naturalization application, (4) award him attorney fees and costs, and (5) grant him further relief deemed just and proper.

On August 27, 2010, Mr. Awe was placed in removal proceedings when he received a notice to appear, which charged him with removability based on his 1983 drug-trafficking conviction. Thereafter, defendants filed a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. Defendants argued that the initiation of removal proceedings precluded the court from granting relief because § 1429 provides, in relevant part, that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding."[3]

The court ruled that § 1429 did not strip it of jurisdiction because the statute referred only to the Attorney General. However, it concluded that because § 1429 precluded the Attorney General from granting Mr. Awe's naturalization application

---

[3] The statutory reference to the Attorney General is a legal artifact. "In 2002, Congress transferred authority (1) to commence removal proceedings and (2) to adjudicate applications for naturalization from the Attorney General to the Secretary of the Department of Homeland Security." *Ajlani v. Chertoff*, 545 F.3d 229, 231 n.2 (2d Cir. 2008). That transfer took effect March 1, 2003. *Batalova v. Ashcroft*, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004). Consequently, the term "Attorney General" in § 1429 now means the "Secretary of Homeland Security." *See* 6 U.S.C. § 557 ("With respect to any function transferred by or under this chapter [principally enacted by the Homeland Security Act of 2002] . . . and exercised on or after the effective date of this chapter, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary [of Homeland Security], other official, or component of the Department [of Homeland Security] to which such function is so transferred.").

- 4 -

while removal proceedings were pending, the court could not grant Mr. Awe the relief he sought—remand to the agency with instructions to naturalize him. Therefore, the court dismissed the petition without prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. This appeal followed.

## II.    Discussion

Before we can review the district court's dismissal under Rule 12(b)(6), we must examine whether this case satisfies the jurisdictional requirements of Article III of the Constitution. We may consider such issues for the first time on appeal, *see Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1176 (10th Cir. 2009), and regardless of the fact that the parties have not raised them, *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 n.15 (10th Cir. 2004). "The mootness doctrine relates to both the constitutional case or controversy requirement of Article III, as well as the prudential considerations underlying justiciability." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (alterations and internal quotation marks omitted). We are concerned here with constitutional mootness, and our review is de novo, *id.* at 1023 n.14.

Several circuits that have considered the effect of § 1429 on federal district court jurisdiction over petitions regarding naturalization have concluded that § 1429 does not strip jurisdiction, agreeing that the plain terms of the statute prohibit only the Attorney General (now the Secretary of Homeland Security, *see* note 3, *supra*)

from considering a naturalization application when removal proceedings are pending against an alien.  *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 258 (3d Cir. 2012); *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004); *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004).  The Second and Fifth Circuits have not decided the jurisdictional issue but instead have assumed that § 1429 does not divest the district court of jurisdiction over a petition filed under 8 U.S.C. § 1447(b), which grants jurisdiction to the district courts over petitions for review when the agency takes more than 120 days to issue a determination on a naturalization application.[4]  *See Ajlani v. Chertoff*, 545 F.3d 229, 237-38 & n.7 (2d Cir. 2008); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340 (5th Cir. 2007).[5]

Of these circuits, four—the Second, Fifth, Sixth, and Ninth—have held that § 1429 nonetheless precludes district courts from granting relief if removal proceedings are pending, although none expressly rested its disposition on any

---

[4]     Section 1447(b), titled "Request for hearing before district court," provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

[5]     Although *Ajlani* and, in relevant part, *Saba-Bakare* involved jurisdiction under § 1447(b) rather than § 1421(c), we consider their analysis relevant to the question of what effect § 1429 has on judicial review under § 1421(c).

- 6 -

constitutional jurisdictional concern. The Sixth Circuit was the first circuit to address the issue, concluding in *Zayed v. United States* that "the restraints that § 1429 imposes on the Attorney General prevent a district court from granting effective relief under § 1421(c) so long as removal proceedings are pending." 368 F.3d at 906. Because "the exclusive power to naturalize aliens rests with the Attorney General" and "§ 1429 bars the use of that power while removal proceedings are pending," the court concluded that "the district court could not properly have ordered the Attorney General to grant Ms. Zayed's application for naturalization." *Id.* The court also considered whether any request for declaratory relief that Ms. Zayed might have made regarding her prima facie eligibility for naturalization might be relevant to a motion to terminate removal proceedings under 8 C.F.R. § 1239.2(f). The court concluded that such a request "might well have been a vain act," *id.*, recognizing that, although the regulation permits an immigration judge to terminate removal proceedings in order "to permit the alien to proceed to a final hearing on a pending application or petition for naturalization," 8 C.F.R. § 1239.2(f), Ms. Zayed had "already had a final hearing on her application." *Zayed*, 368 F.3d at 907.

The Ninth Circuit was the next circuit to address the issue. In *Bellajaro v. Schiltgen*, the agency denied a naturalization application on the ground that removal proceedings were pending. 378 F.3d at 1046. The Ninth Circuit concluded that under § 1429, the district court could review that basis for the denial, which was indisputably correct, but § 1429 precluded the district court from reviewing the

merits of the application and determining in the first instance whether Mr. Bellajaro was entitled to naturalization. *Id.* The court also rejected the argument that the district court could declare him "eligible for naturalization but for the pendency of removal proceedings" in order to "buttress a request that he would like to renew before the agency to terminate removal proceedings [under 8 C.F.R. § 1239.2(f)] so that his application for naturalization may be considered on the merits." *Id.* at 1047 (emphasis omitted). The court concluded that even though a decision by the Board of Immigration Appeals (BIA) permitted prima facie eligibility for naturalization to be established by a judicial declaration, *see In re Cruz,* 15 I. & N. Dec. 236, 237 (BIA 1975), the BIA could not "confer jurisdiction on federal courts, or enlarge the scope of review, beyond that granted by Congress." *Bellajaro*, 378 F.3d at 1046.

The Fifth Circuit was next to consider this issue. In *Saba-Bakare v. Chertoff*, the Fifth Circuit reasoned that invoking jurisdiction under §1447(b) "would be futile" because § 1429 requires an alien to "wait until the termination of the removal proceeding before either a district court or the USCIS entertains a question regarding [a] naturalization application." 507 F.3d at 340. The court also noted that in light of a 1990 amendment to § 1421 that moved the sole authority to naturalize aliens from the federal courts to the Attorney General, the BIA's earlier decision in "*Matter of Cruz* indicates that only an affirmative communication from the USCIS may establish prima facie eligibility." *Id.* at 341. Hence, the court said, *Cruz* provided no basis for

a declaratory judgment by the district court as to Mr. Saba-Bakare's prima facie eligibility for naturalization. *Id.*

Following on these cases, the Second Circuit took up the issue in *Ajlani v. Chertoff*, concluding that Mr. Ajlani failed to state a claim for relief under § 1447(b) because § 1429 prohibited the district court from remanding the matter to the agency with "appropriate" instructions "to admit Ajlani to citizenship in advance of the completion of . . . removal proceedings." 545 F.3d at 239. The court further determined that, under § 1447(b), the district court could not issue an order of naturalization in lieu of the agency because "Congress did not contemplate judicial orders of naturalization under circumstances where Congress has called an explicit statutory halt to the executive's ability to give any further consideration to an alien's naturalization application until removal proceedings end." *Id.* at 240.[6]

The only circuit to reach a contrary conclusion is the Third Circuit in *Gonzalez v. Secretary of Department of Homeland Security*, a case that was decided during the briefing of this appeal. In *Gonzalez*, the court concluded that § 1429 does

---

[6]     The Fourth Circuit appears aligned with the Second, Fifth, Sixth, and Ninth Circuits on the preclusive effect § 1429 has on judicial review, although its view appears in a different context and is likely dictum. Interpreting 8 C.F.R. § 1239.2(f), the Fourth Circuit concluded that the Department of Homeland Security (DHS) has sole authority to determine prima facie eligibility for naturalization under § 1239.2(f). *Barnes v. Holder*, 625 F.3d 801, 806 (4th Cir. 2010). The court rejected an argument that this interpretation of the regulation deprived the alien of his right to judicial review under § 1421(c). *Id.* Citing *Zayed* and *Bellajaro*, the court stated that under § 1429, "an alien in removal proceedings does not have a right to have his application adjudicated [by the agency]," and therefore "he cannot possibly have a right to have the adjudication judicially reviewed." *Id.* at 806-07.

not preclude district courts from granting declaratory relief regarding the denial of a naturalization application. 678 F.3d at 259-61. The Third Circuit reasoned that "[d]eclaratory relief strikes a balance between the petitioner's right to full judicial review as preserved by § 1421(c) and the priority of removal proceedings enshrined in § 1429." *Id.* at 260. The court also opined that

> [d]eclaratory relief, in the form of a judgment regarding the lawfulness of the denial of naturalization, permits the alien a day in court, as required by § 1421(c), while not upsetting the priority of removal over naturalization established in § 1429 because it affects the record for— but not the priority of—removal proceedings, thereby preserving both congressionally mandated goals, a *de novo* review process and the elimination of the race to the courthouse.

*Id.* at 261.

We agree with the shared conclusion of the Third, Sixth, and Ninth Circuits that § 1429 does not strip district courts of jurisdiction over petitions regarding naturalization applications. Plainly, the statutory prohibition refers only to the Attorney General (read: the Secretary of Homeland Security). We also agree with the majority view of the Second, Fifth, Sixth, and Ninth Circuits that removal proceedings, whether in process at the time a § 1421(c) petition is filed or initiated thereafter, effectively bar federal consideration of § 1421(c) petitions by virtue of § 1429.[7] However, our conclusion as applied to Mr. Awe rests on the doctrine of

---

[7] Because only a § 1421 petition is at issue here, any statements we might make about § 1447(b) petitions would be dicta. We therefore confine our ensuing discussion to the § 1421 petition at issue in this case.

constitutional mootness, not whether there has been a failure to state a claim upon which relief can be granted.[8]

As we aptly summarized in *Jordan v. Sosa*, the doctrine of constitutional mootness requires that a "controversy must remain alive at the trial and appellate stages of the litigation." 654 F.3d at 1024 (internal quotation marks omitted). The focus is on "whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." *Id.* (internal quotation marks omitted). To avoid mootness, a case must be "amenable to specific relief." *Id.* (emphasis and internal quotation marks omitted).

The initiation of removal proceedings against Mr. Awe rendered his § 1421(c) petition moot. A ruling by the district court ordering the USCIS to grant Mr. Awe's naturalization application, which was the substantive focus of his prayer for relief, would be ineffective because of § 1429's prohibition on agency action during the pendency of removal proceedings. Thus, the initiation of removal proceedings constituted a "change of circumstances" that precluded any "conclusive" or "specific" relief" by the district court. *Id.*

---

8       We likely would reach the same conclusion if Mr. Awe had filed his petition after the initiation of removal proceedings, as was the case in *Bellajaro*, *Saba-Bakare*, and *Gonzalez*, but under the redressability component of an Article III standing inquiry, not constitutional mootness. *See Tandy*, 380 F.3d at 1283 (listing elements of standing, including that "it is likely, as opposed to merely speculative, that [a plaintiff's] injury will be redressed by the relief requested").

Furthermore, on these facts, we do not discern the applicability of any recognized exceptions which would preclude our determination that the case is moot. This is not an instance where defendants have voluntarily ceased the offending conduct. *See id.* at 1037 (describing voluntary-cessation exception to mootness). Nor is it one where defendants' challenged conduct is capable of repetition yet would evade review. That exception to mootness, which is used only "in exceptional situations," *id.* at 1035 (internal quotation marks omitted), requires its proponent to show, "outside of the class-action context," that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" and that "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* at 1035 (brackets and internal quotation marks omitted). The reason Mr. Awe's § 1421(c) petition is moot is because of the effect § 1429 has on the agency's ability to consider his naturalization application, not because of any durational characteristic of defendants' action.

And although he did not ask for declaratory relief, such relief also would succumb to mootness. "[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.* at 1025. Plainly, a declaration by the district court that Mr. Awe met all the requirements for naturalization could not affect the behavior of the Secretary of Homeland Security because § 1429 bars her from acting. And to the extent Mr. Awe might seek a judicial declaration as to

- 12 -

his prima facie eligibility for naturalization for purposes of terminating his removal proceedings under 8 C.F.R. § 1239.2(f), his case is procedurally analogous to *Zayed*: he has no pending naturalization application, so the regulation does not afford a basis for an immigration judge to terminate removal proceedings. *See Zayed*, 368 F.3d at 906-07. Hence, a declaration regarding prima facie eligibility would not ultimately affect the behavior of any of the parties listed in Mr. Awe's complaint.[9]

Finally, to the extent Mr. Awe suggests that the Secretary of Homeland Security can avoid judicial review under § 1421(c) by initiating removal proceedings after the denial of a naturalization application, we are not at liberty to cast aside jurisdictional requirements of the Constitution or the statutory bar of § 1429. This concern is appropriately addressed to Congress. *See Saba-Bakare*, 507 F.3d at 341 (stating that equitable concerns regarding statutory framework of naturalization and immigration proceedings "should be addressed to Congress").

---

[9] We note, without expressing an opinion on the matter, the BIA's post-*Cruz* conclusion that, in light of the passage of § 1421(a) in 1990, federal courts no longer have authority to provide declarations of prima facie eligibility; that power "lies exclusively with the DHS." *In re Hidalgo*, 24 I. & N. Dec. 103, 105-06 (BIA 2007).

## III.    Conclusion

The judgment of the district court is **VACATED**, and the matter is

**REMANDED** with instructions to dismiss the action without prejudice for lack of

jurisdiction.

Entered for the Court


Jerome A. Holmes
Circuit Judge