# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1223

TRINIDAD KIERULF KLENE,

*Plaintiff-Appellant*,

*v.*

JANET NAPOLITANO, Secretary
of Homeland Security, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 3921—**James B. Zagel**, *Judge*.

ARGUED SEPTEMBER 10, 2012—DECIDED OCTOBER 12, 2012

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  An alien (Trinidad Kierulf
Klene, of the Philippines) applied for citizenship. United
States Citizenship and Immigration Services ("the
agency") denied the application after concluding that
Klene's marriage to a U.S. citizen had been fraudulent.
Klene promptly asked a district court for relief under

8 U.S.C. §1421(c), which allows a judge to make an independent decision about an alien's entitlement to be naturalized; later, the agency opened proceedings to remove her from the United States. Once the administrative removal proceedings were under way, the agency asked the district court to dismiss Klene's suit. The agency relied on 8 U.S.C. §1429, which provides: "[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act". The agency acts as the Attorney General's surrogate under the reorganization that created the Department of Homeland Security. Although we use the statutory terminology, readers should understand that "Attorney General" means "the agency." The district judge granted the agency's motion and dismissed the suit. 2011 U.S. Dist. LEXIS 148356 (N.D. Ill. Dec. 27, 2011).

Courts of appeals that have considered the interaction between §1421(c) and §1429 have reached four different conclusions:

- One court of appeals has held that the judicial proceeding becomes moot as soon as the administrative proceeding begins, so the suit must be dismissed for lack of a case or controversy. *Awe v. Napolitano*, 2012 U.S. App. LEXIS 17469 (10th Cir. Aug. 20, 2012) (nonprecedential).

- Two courts of appeals have held that district courts lose subject-matter jurisdiction once the removal proceeding begins. *Barnes v. Holder*, 625 F.3d

801 (4th Cir. 2010); *Saba-Bakare v. Chertoff*, 507 F.3d 337 (5th Cir. 2007).

- Three courts of appeals have held that §1429 does not affect subject-matter jurisdiction but does prevent the courts from providing a remedy, so judgment must go for the agency on the merits. *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008); *Zayed v. United States*, 368 F.3d 902 (6th Cir. 2004); *Bellajaro v. Schiltgen*, 378 F.3d 1042 (9th Cir. 2004).

- One court of appeals has held that subject-matter jurisdiction continues and that a remedy is possible—a declaratory judgment of entitlement to citizenship. *Gonzalez v. Secretary of Homeland Security*, 678 F.3d 254 (3d Cir. 2012).

The agency urges us to hold that institution of a removal proceeding deprives the district court of subject-matter jurisdiction, as the fourth and fifth circuits have concluded.

We start with the question whether there is a case or controversy. The tenth circuit thought not, yet the parties are locked in conflict about whether Klene is entitled to be naturalized. True, if the agency is right, that conflict must be resolved in the removal proceedings, followed (if necessary) by review in the court of appeals under 8 U.S.C. §1252. But there is undoubtedly a concrete, ongoing controversy between Klene and the agency about whether her marriage was fraudulent. If Klene is right, she can become a citizen; if the agency is right, Klene will not be naturalized and likely must leave the United States. Parallel civil proceedings are common. Often one party sues in state court and the other counter-

sues in federal court; sometimes there are federal suits in different districts. Until one of the proceedings reaches judgment, neither makes the other moot or otherwise deprives either tribunal of competence under Article III. We therefore disagree with *Awe*.

Subject-matter jurisdiction comes next in the logical sequence. *Barnes* and *Saba-Bakare* concluded that, by preventing the Attorney General from naturalizing an alien once removal proceedings have commenced, §1429 deprives the district court of jurisdiction to act in an alien's suit. That's a non sequitur. What the Attorney General may do—and derivatively what a court may order the Attorney General to do—concerns the merits. During the last decade, the Supreme Court has repeatedly stressed that there is a fundamental difference between mandatory rules, such as the one in §1429, and jurisdictional limits. See, e.g., *Henderson v. Shinseki*, 131 S. Ct. 1197, 1202–03 (2011); *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *Kontrick v. Ryan*, 540 U.S. 443 (2004). See also *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 851–53 (7th Cir. 2012) (en banc), which discusses this line of decisions. Jurisdiction concerns the tribunal's power to hear a case and decide what the law requires. Congress has authorized district courts to decide whether aliens are entitled to naturalization. No more is necessary for subject-matter jurisdiction. If some other pending proceeding must be completed before a court can resolve the merits, usually the court should stay the suit rather than dismiss it. See *Rhines v. Weber*, 544

U.S. 269 (2005). We therefore disagree with *Barnes* and *Saba-Bakare*.

The second, sixth, and ninth circuits found that district judges retrain jurisdiction but held that §1429 prevents them from affording relief. If the Attorney General cannot naturalize an alien after removal proceedings have begun, the court cannot direct the Attorney General to naturalize the alien. Judges must not order agencies to ignore constitutionally valid statutes. Cf. *United States v. Bean*, 537 U.S. 71 (2002) (court cannot order Attorney General to act on an application to lift a firearms disability, once Congress prevents the Attorney General from spending funds to process these applications). The district court in our case agreed with that conclusion, as do we. But to say that the court cannot order the Attorney General to naturalize an alien is *not* to say that the court cannot act. The second, sixth, and ninth circuits neglected the possibility of declaratory relief. (The sixth circuit did mention it but did not pursue the subject because the alien did not ask for a declaratory judgment; the other circuits did not get even that far.)

The third circuit, the only appellate court to rule on the possibility, held that a declaratory judgment of entitlement to citizenship would not violate §1429, because it would not order the Attorney General to naturalize the alien while a removal proceeding was ongoing. And a declaratory judgment in the alien's favor (for example, a judgment declaring that Klene's marriage was *bona fide*) would bring the removal proceeding to a prompt

close, allowing the Attorney General to naturalize the alien. The alien could plead the declaratory judgment in the removal proceedings, because the United States as a whole is bound by principles of mutual issue and claim preclusion. Compare *United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1984) (issue preclusion applies in multiple contests between the United States and the same adversary), with *United States v. Mendoza*, 464 U.S. 154 (1984) (defensive non-mutual issue preclusion does not apply to the United States). This approach preserves the alien's entitlement under §1421(c) to an independent judicial decision while respecting the limit that §1429 places on the Attorney General's powers.

What makes this possible is the fact that the Attorney General acted on Klene's application before the agency commenced removal proceedings. If the application for naturalization had been pending when the removal proceedings began, then the Attorney General would not have made a final decision and §1421(c) would not have allowed Klene to ask the district court for relief. The agency wants us to treat the two situations as equivalent and to understand §1429 as announcing a general policy against multiple proceedings. But that isn't what §1429 says. It tells the Attorney General to put an application aside once removal proceedings begin; it does not issue a similar directive to a court. Section 1421(c) gives the alien a right to an *independent* ("de novo") judicial decision, a right that can be valuable compared with the kind of review available following an order of removal. A court of appeals reviewing a removal decision under §1252 makes an independent decision

on legal questions (subject to the principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)) but on factual issues asks only whether substantial evidence supports the agency's conclusion.

The existence of overlapping proceedings does not diminish a district court's power but does present a question on which the judge should exercise sound discretion. A judge asked to enter a declaratory judgment that as a practical matter will dispose of some other case should consider whether a multi-track course of litigation is the best way to resolve the dispute. See *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942). Appellate review of the judge's decision—whether to grant or to withhold declaratory relief—is deferential. See *Envision Healthcare, Inc. v. PreferredOne Insurance Co.*, 604 F.3d 983 (7th Cir. 2010). In Klene's case, however, the district judge thought that he had no discretion to exercise. That was a mistake, so we remand with instructions to decide whether it is appropriate to resolve the dispute through a declaratory judgment and, if so, to decide the merits.

A final observation. Klene contends that the district judge *must* decide her case on the merits. Section 1429 applies "if there is pending against the applicant a removal proceeding *pursuant to a warrant of arrest*" (emphasis added). She has never been arrested, she contends—at least, she has not been taken into custody. But the agency has issued a regulation providing that a "notice to appear" in a removal proceeding should be

treated as a "warrant of arrest" too. 8 C.F.R. §318.1. An agency can't rewrite statutory terms, but it can define its own vocabulary. Since "arrest" does not imply custody even in police parlance (full custodial arrests are a subset of all arrests), there's no logical problem with an agency calling its official process a "notice to appear" and a "warrant of arrest" at the same time, without needing to issue two separate documents. On this, at least, all other courts of appeals agree, and we join them.

VACATED AND REMANDED