# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3772

_____

Ethan O'Dell Moody

*Plaintiff - Appellant*

v.

Frank Vozel, Deputy Director and Chief Engineer, in his official and individual capacity; Dan Flowers, Director of Highways and Transportation, in his official and individual capacity; Arkansas State Highway and Transportation Department

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 11, 2014
Filed: November 18, 2014

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

After being terminated from the Arkansas State Highway and Transportation Department (AHTD), Ethan O'Dell Moody brought suit, alleging race and gender discrimination and violations of various statutory and constitutional rights. The

district court[1] dismissed all but Moody's discrimination claims, denied Moody leave to amend his complaint, and subsequently granted summary judgment in favor of AHTD on the remaining claims. The district court also denied Moody's motions to reconsider. Moody appeals and, having jurisdiction under 28 U.S.C. § 1291, we now affirm.

## I. BACKGROUND

Moody, a Caucasian male, worked for AHTD for over twenty-six years. He initially worked as a truck driver and mower operator and later was promoted to crew leader, a supervisory position. Moody strictly enforced AHTD rules and policies, and his crew considered him a stern supervisor. In 2007, Moody reported an incident between two of his crew members during which a Caucasian female employee—Wanda Aldrich—held a knife to the throat of an African-American male employee—Earnest Russell. Three years later, on October 26, 2010, Aldrich purportedly told Moody, "Someone is going to pay for telling on me for pulling a knife on Earnest's throat."

In October 2010, two of Moody's female crew members, Belinda Rogers and Rebecca Bohannon, accused Moody of sexual harassment. Moody denied, and continues to deny, these allegations. Moody had previously disciplined both Bohannon and Rogers for violations of AHTD policies and believes they made the false allegations in retaliation.

AHTD has an official policy against sexual harassment, on which Moody received training, and AHTD classifies sexual harassment as a terminable offense. Upon receipt of the harassment charges, AHTD's Equal Employment Opportunity division conducted an investigation, which included an interview with Moody. Based

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

on the results of that investigation, AHTD terminated Moody's employment for violating its sexual harassment policy. Moody filed a grievance disputing the termination, which was submitted to a disinterested grievance panel. After a two-day hearing, at which Moody testified, the grievance panel upheld Moody's termination.

In May 2011, Moody filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), which the EEOC dismissed for lack of evidence. After receiving notice of his right to sue, Moody brought this claim.

Moody sued AHTD, Deputy Director and Chief Engineer Frank Vozel, and Director of Highways and Transportation Dan Flowers (collectively, defendants) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983, alleging race and gender discrimination, civil conspiracy, retaliation, and violations of due process and equal protection as guaranteed by the Fourteenth Amendment of the United States Constitution. The defendants each moved to dismiss all but Moody's discrimination claims against AHTD for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and on various other grounds. The district court granted the motions. Moody then sought to amend his complaint under Federal Rule of Civil Procedure 15(a), with respect to the claims the district court dismissed without prejudice, but the district court, after reviewing Moody's proposed amended complaint, denied Moody leave to amend because amendment would be futile. After conducting discovery, AHTD moved for summary judgment on Moody's claims of race and gender discrimination, which the district court granted. The district court denied Moody's motions to reconsider, and Moody appealed.

## II.    DISCUSSION

### A.    Issues on Appeal

In his notice of appeal, Moody purports to appeal several of the district court's rulings, however, his statement of issues presented in his brief focuses on the summary judgment, and the body of his brief does not affirmatively discuss in any depth the district court's Rule 12(b)(6) dismissal of Moody's official capacity, civil conspiracy, retaliation, and constitutional claims. Because Moody has not "provid[ed] any analysis or development in his briefs," he has waived these claims. United States v. Frausto, 636 F.3d 992, 997 (8th Cir. 2011). To the extent Moody raises these claims, they are without merit.

### B.    Motion to Amend

Moody challenges the district court's denial of his motion to amend after the Rule 12(b)(6) dismissal of his non-discrimination and official capacity claims. "This court generally reviews a district court's denial of leave to amend a complaint for abuse of discretion, though the underlying legal conclusions for a denial based on the futility of the proposed amendments are reviewed de novo." Reuter v. Jax Ltd., 711 F.3d 918, 921 (8th Cir. 2013). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6).'" Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (quoting Cornelia I. Crowell GST Trust v. Possis Med., Inc., 519 F.3d 778, 782 (8th Cir. 2008)).

The district court correctly found Moody's proposed additions to his complaint would not change the rulings on the defendants' motions to dismiss. Moody's new "factual" allegations were not facts but were legal conclusions—lifted directly from the district court's original order—rephrased as facts. The district court did not abuse its discretion in denying Moody leave to amend because amendment would be futile.

## C.    Summary Judgment

Moody also argues the district court improperly granted summary judgment in favor of AHTD.  On appeal, this court reviews grants of summary judgment de novo, and "review[s] the evidence and" all reasonable inferences "in the light most favorable to the nonmoving party." Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012).  Moody specifically faults the district court for not properly considering what he sees as direct and circumstantial evidence of discrimination and for failing to consider his length of employment with AHTD.[2]  We detect no error in the district court's judgment.

Moody contends he suffered race discrimination because he was terminated for reporting a "racial incident" and gender discrimination because he was falsely accused of sexual harassment by two female employees.  To survive a motion for  summary judgment, Moody must present either direct or indirect evidence of discrimination. See Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).  Moody purports to have both direct and indirect evidence of discrimination.

### 1.    Direct Evidence of Discrimination

"[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." Griffith, 387 F.3d at 736 (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)).  Direct evidence of discrimination must

_____

[2]Moody relies on cases from other jurisdictions to claim longevity of employment alters the at-will employment relationship such that a long-serving employee can only be fired for cause.  See, e.g., McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339-40 (9th Cir. 1987); Flanigan v. Prudential Fed. Sav. & Loan Ass'n, 720 P.2d 257, 261-62 (Mont. 1986).  Even if this were the law of Arkansas, it is inapposite here because Moody was fired for cause.

relate to people with decision-making authority; "'stray remarks in the workplace'" and "'statements by nondecisionmakers'" are not direct evidence. Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) (quoting Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993)). In his opening brief, Moody elaborates on the distinction between direct and circumstantial evidence and presents this court with numerous other interpretations of the direct evidence standard. Under any interpretation, Moody has not presented direct evidence of discrimination.

Moody claims Aldrich's statement, "Someone is going to pay for telling on me for pulling a knife on Ernest's throat," is direct proof of race discrimination because the fight was a "racial incident." Moody also appears to argue both Aldrich's statement and the claims of sexual harassment directly prove his gender discrimination claim because they were made by women. These allegations are not direct evidence of discrimination. Even assuming Aldrich's statement were motivated by racial animus, Aldrich was not a decisionmaker and Moody presents no link between her statement and AHTD's decision to terminate his employment. And the mere fact that members of the opposite gender filed the complaints that led to Moody's termination is not sufficient to show gender discrimination. At most, Moody's evidence shows discord with his female subordinates, not that any discriminatory animus motivated his termination by the decisionmakers.

### 2. **McDonnell Douglas Framework**

Absent direct evidence, this court evaluates a plaintiff's discrimination claim under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04 (1973). Under this framework, Moody must first make "a prima facie case of employment discrimination." Davis, 685 F.3d at 681. To make a prima facie showing, Moody must prove he "'(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer;

(3) suffered an adverse employment action; and (4) [suffered] under circumstances permitting an inference of discrimination.'" Id. (alteration in original) (quoting Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 550 (8th Cir. 2005)). Because this is a claim of reverse discrimination, Moody must also prove AHTD "is the unusual employer who discriminates against the majority." McGinnis v. Union Pac. R.R., 496 F.3d 868, 875 (8th Cir. 2007). If Moody makes this threshold showing, the burden shifts to AHTD to offer a legitimate, non-discriminatory justification for its adverse employment action. See Davis, 685 F.3d at 681. If AHTD meets this burden, Moody must then prove AHTD's justification is a mere pretext for discrimination. See id.

Moody's claims of race and gender discrimination fail under the McDonnell Douglas framework. Even assuming Moody made a prima facie showing—which is dubious—AHTD offered a legitimate, non-discriminatory justification for his termination: Moody's violations of AHTD's sexual harassment policy. Moody's evidence does not indicate AHTD's justification is a pretext for discrimination. Moody emphasizes that the sexual harassment claims against him were false, but he does not offer any evidence that would enable a reasonable juror to infer the defendants believed or should have known the claims were false. "The critical inquiry . . . is not whether [Moody] actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that [he] was guilty of the conduct justifying discharge." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861-62 (8th Cir. 2009). AHTD maintains it conducted a thorough investigation and formed a good faith belief the allegations were true before terminating Moody's employment. Moody does not present evidence to rebut this claim.

Moody offers a number of unavailing arguments in an attempt to prove pretext. For example, Moody notes other AHTD employees, who were disciplined for sexual harassment and other offenses, were not terminated. Moody does not, however,

engage in a full comparator analysis, see, e.g., Burton v. Ark. Sec'y of State, 737 F.3d 1219, 1230-32 (8th Cir. 2013), nor does he seriously and persuasively dispute the defendants' evidence that these noted individuals were not similarly situated to him.

Moody further contends his supervisor, subordinates, and coworkers wanted to see him fired to satisfy personal vendettas and Vozel and Flowers approved his termination in an attempt to maintain the "good ole boy" attitude at AHTD. These accusations do not amount to race or gender discrimination as Moody presents no evidence discriminatory animus motivated his termination.

The record evidence is not sufficient to create an issue for trial over whether AHTD terminated Moody's employment because of his race or gender rather than because AHTD reasonably believed Moody had sexually harassed certain female subordinates.[3]

## III.  CONCLUSION

The judgment is affirmed.

_____

---

[3]Moody takes issue with the district court's denial of his "motions to reconsider" the summary judgment, presumably brought under Rule 59(e). As discussed above, the district court correctly granted summary judgment and Moody has not articulated any reason on appeal justifying the reconsideration of this judgment. The district court did not abuse its discretion in denying Moody's motions. See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).